O'Connor v. State.

THOMAS O'CONNOR v. STATE OF NEBRASKA.

FILED OCTOBER 15, 1895.    No. 6849.

1. **Physicians and Surgeons**: STATE BOARD OF HEALTH: CERTIFICATES. By the act of the legislature of 1891 (Session Laws, 1891, p. 280, ch. 35) to establish a state board of health and regulate the practice of medicine in the state of Nebraska it was made unlawful for any person to practice medicine, surgery, or obstetrics, or any of the branches thereof, without first having obtained and registered a certificate from the state board of health as provided in the act.

2. ———: ACT CREATING STATE BOARD OF HEALTH: INFORMATION FOR VIOLATION. The exceptions made by section 11 of the act were not from the operation of the portion of the law which required a certificate to be obtained from the state board of health and its registration by persons practicing medicine, surgery, or

obstetrics. After the expiration of six months from the passage of the act the persons designated in the exceptions were as liable to prosecution for non-compliance with the law in these particulars as were any others, and the subject of the exception did not become a part of the description of the offense of non-compliance with the provisions of the act, or limit or qualify the language of the act creating such offense, nor was any negative averment in regard to the exceptions necessary in an information charging a person with practicing medicine, etc., without having complied with the provisions of the act.

3. ———: ———: ———. The decision in the case of *Gee Wo v. State*, 36 Neb., 241, overruled to the extent that it held that a negative averment in regard to the matter of the exceptions contained in section 11 of the act referred to, was necessary in the information filed in that case.

4. **Informations.** In an information it is necessary to state specifically the essential facts constituting the crime charged.

5. **Physicians and Surgeons:** PRACTICE IN VIOLATION OF STATUTE: INFORMATION. The law of 1891 regulating the practice of medicine (see Compiled Statutes, 1895, secs. 3684–3702), after providing that any person not possessing the qualifications for the practice of medicine required by its provisions, or any person who, not having complied with the requirements of its provisions, shall engage in the practice of medicine, shall be deemed guilty of a misdemeanor, further states that "Any person shall be regarded as practicing medicine within the meaning of this act who shall operate on, profess to heal or prescribe for or otherwise treat any physical or mental ailment of another.".(Session Laws, 1891, p. 285, sec. 17, ch. 35.) *Held*, To be a definition of practicing medicine, and further, that in charging the crime of practicing medicine without having complied with the provisions of the act, there must be a statement of facts showing the doing by the accused person of one or more of the acts included within the foregoing statutory definition.

ERROR to the district court for Lancaster county. Tried below before TIBBETS, J.

The facts are stated in the opinion.

*Charles A. Robbins,* for plaintiff in error:

The information does not state an offense under the law. (*Gee Wo v. State,* 36 Neb., 241.)

O'Connor v. State.

The verdict of the jury and judgment of the court are not sustained by the evidence. (*People v. Phippin*, 37 N. W. Rep. [Mich.], 888.)

The act under which the information was filed is unconstitutional. (*People v. Phippin*, 37 N. W. Rep. [Mich.], 898; Constitution, United States, sec. 2, art. 4, sec. 1, art. 14; Constitution, Nebraska, secs. 1, 3, art. 1; *Taylor v. Porter*, 4 Hill [N. Y.], 147; *Poppen v. Holmes*, 44 Ill., 360; *In re Graduates*, 11 Abb. Pr. [N. Y.], 301; *In re Railroad Commissioners*, 15 Neb., 679.)

*A. S. Churchill*, Attorney General, contra, cited: *State v. Hathaway*, 21 S. W. Rep. [Mo.], 1081.

*W. H. Woodward* and *F. W. Collins*, also for the state.

HARRISON, J.

The plaintiff in error was tried in the district court of Lancaster county on a charge of practicing medicine in said county without first obtaining a certificate and filing the same or a copy thereof in the office of the county clerk, and was convicted and sentenced. The information was as follows: ·

"Be it remembered that Novia Z. Snell, county attorney in and for Lancaster county and the third judicial district of the state of Nebraska, who prosecutes in the name and by the authority of the state of Nebraska, comes here in person into court at this, the February term, A. D. 1892, thereof, and for the state of Nebraska gives the court to understand and be informed that one Thomas O'Connor, late of the county aforesaid, on the 1st day of March, 1892, and thereon continuously until the 28th day of April, A. D. 1892, in said county of Lancaster and state of Nebraska aforesaid, did unlawfully practice medicine without having first obtained a certificate from the state board of health and filing it, or a copy thereof, in the office

of the county clerk of Lancaster county, that being the county in which the said Thomas O'Connor at all times herein mentioned resided and in which he practiced medicine as aforesaid.

"Second Count.—And the county attorney aforesaid, by the authority aforesaid, shows to the court by a second and further count that one Thomas O'Connor, on the 8th day of December, 1891, in the county of Lancaster and state of Nebraska, did unlawfully practice medicine without having first obtained a certificate from the state board of health and filing it, or a copy thereof, in the office of the clerk of Lancaster county, that being the county in which the said Thomas O'Connor at all times herein mentioned resided and in which he practiced medicine as aforesaid.

"Third Count.—And the county attorney aforesaid, by the authority aforesaid, shows to the court by a further and third count that one Thomas O'Connor, on the 9th day of December, 1891, and then continually until the 1st day of January, 1892, in the county of Lancaster and state of Nebraska, did unlawfully practice surgery without having first obtained a certificate from the state board of health and filing it, or a copy thereof, in the office of the clerk of Lancaster county, that being the county in which the said Thomas O'Connor at all times herein mentioned resided and in which he practiced surgery as aforesaid, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Nebraska."

There was a stipulation filed in which it was agreed that the second count of the information was to be ignored and the prosecution to rest upon the first and third counts, and if convicted the sentence was to be for the charge in but one, either the first or third of the counts of the information.

It is contended that there was no sufficient statement of an offense in the information, in that it does not negative

certain exceptions contained in a section of the statutory provisions under which the prosecution was instituted; that the exceptions referred to were of such a character as to enter into and become necessary parts of the description of the offense, and being omitted in the information, it did not state the offense; that an information precisely similar to this one, except as to names and dates, was considered and passed upon by this court in the case of *Gee Wo v. State*, 36 Neb., 241, and within the rule therein announced held not to state an offense. The doctrine stated in that case was as follows: "In charging an offense under a statute the general rule is that a negative averment of the matter of a proviso is not required in an information unless the matter of such proviso enters into and becomes a part of the description of the offense or is a qualification of the language defining or creating it. Where, however, the matters of the proviso point directly to the character of the offense, or where the statute includes two or more classes which will be affected thereby, such as physicians who remove into the state to practice after the passage of an act to regulate the practice of medicine, and persons who were residing in the state and practicing under a former act, in such cases the information must show on its face that the accused does not belong to either class." By an act of the legislature of 1891 there was established a state board of health, and it was made one of the duties of this board to see that all the provisions of the act were strictly enforced, and to grant certificates to qualified persons to engage in the practice of medicine, surgery, or obstetrics, or any of the branches thereof, on compliance with the requirements of the act and furnishing the proof of such qualifications, among which is that the applicant be a graduate of a legally chartered medical school or college in good standing and the possession of a diploma attesting such fact. Section 7 of the act is as follows: "It shall be unlawful for any person to practice medicine, surgery, or obstetrics, or any of the branches

15

thereof, in this state without first having obtained and reg-
istered the certificate provided for by this act; and no per-
son shall be entitled to a certificate herein provided for
unless he shall be a graduate of a legally chartered medi-
cal school or college in good standing; said qualifications
to be determined by the board; *Provided, however,* That
nothing in this act shall be construed to prevent physicians
residing in other states from visiting patients in consultation
with resident physicians who have complied herewith."
Sections 9 and 10 provide what proof of qualifications
shall be produced, how made, and for the issuance of the
certificate and the filing of the same, or a copy thereof,
with the county clerk of the county in which the party re-
sides or intends to practice medicine. Section 11, which
contains the exceptions, is as follows: "All physicians who
shall be engaged in practice at the time of the passage of
this act shall, within six months thereafter, present to said
board their diplomas and affidavits as hereinbefore pro-
vided, or in the case of persons not graduates who were
entitled to registration and practice under the act entitled
'An act to regulate the practice of medicine in the state of
Nebraska,' approved March 3, 1881, on affidavit showing
them to have been entitled to so register and practice and a
certified transcript of their registration under said act, and
upon their doing so, shall be entitled to the certificate herein
provided, which they shall file with the county clerk as
herein provided; *Provided,* That no one having the quali-
fications required in and having complied with said act of
March 3, 1881, shall be liable to prosecution for failure to
comply with this act until the expiration of said period of
six months." Section 16, which defines unlawful practice of
medicine, etc., and provides the penalty therefor, reads as
follows: "Any person not possessing the qualifications for
the practice of medicine, surgery, or obstetrics required by
the provisions of this act, or any person who has not com-
plied with the provisions of this act who shall engage in the

practice of medicine, surgery, or obstetrics, or any of the
branches thereof, in this state shall be deemed guilty of a
misdemeanor and on conviction thereof shall be fined in
any sum not less than fifty ($50) dollars nor more than
three hundred ($300) dollars, and costs of prosecution for
each offense, and shall stand committed until such fine and
costs are paid." By the provisions of section 7 it was made
unlawful for any person to practice medicine, etc., without
having first obtained and registered the certificate of the
state board, and that to enable him to obtain it the appli-
cant must be a graduate of a medical college or school
legally chartered and in good standing. In section 11 cer-
tain parties were excepted from the requirements of the act
in relation to their being graduates of a medical school or
college, but not relieved from the necessity of obtaining a
certificate and its registration. From these exactions of
the law there were no exceptions. After the expiration of
six months from the passing of the act it was just as nec-
essary that the persons designated in section 11 should
have procured certificates and their registration as any
others. None were exempted from these duties. The act
was approved March 27, 1891. Courts take judicial no-
tice of the time of passage and approval of laws. The
dates of the acts charged in the complaint in this case were
more than six months from the passage of the law in.
question, and the prosecution was for non-compliance with
its demands, for unlawfully practicing medicine without
first having obtained a certificate from the state board of
health and filed it, or a copy of it, in the office of the
county clerk of Lancaster county. There being no persons
excepted from the full operation of the act wherein it
commanded that the certificate be procured and registered,.
the exceptions of section 11 of the act, not relieving the
persons pointed out from procuring and registering a cer-
tificate, were not relevant to or a part of the description of
the crime sought to be charged in the information, hence

no negative averment in regard to them was necessary in the information, and the same was true of the information in the case of *Gee Wo v. State*, 36 Neb., 241. The date of the act charged as unlawful in that case was more than six months after the passage of the act of 1891, under the provisions of which the prosecution was instituted, and the opinion in that case, inasmuch as it applied the rule announced to the information filed therein and held it insufficient for lack of a negative averment in reference to the exceptions stated in section 11 of the act of 1891, is overruled. Had the information in that case or the case at bar contained a charge of the unlawful practice of medicine, etc., without having the necessary medical educational qualifications, not being a graduate of a medical college and possessing the diploma, then the exceptions of section 11 might have been relevant and the averment of them necessary, but this we need not now, and do not, determine.

It is further urged that the information contained an insufficient statement of the crime, in that it charged the defendant with unlawfully practicing medicine, etc., on and between certain dates and did not state specifically any facts or acts constituting the crime sought to be charged. Section 17 of the act of 1891, immediately following the section declaring the practice of medicine without possessing the prescribed qualifications, or without having complied with the requirements of the law in regard to the certificate, a misdemeanor, and providing a penalty therefor, defines a practitioner as follows: "Any person shall be regarded as practicing medicine within the meaning of this act who shall operate or profess to heal or prescribe for or otherwise treat any physical or mental ailment of another." It is claimed that here is a plain definition of what constituted practicing medicine, contained in the act itself, and that the information in this case, in order to sufficiently charge the commission of the crime, should have

O'Connor v. State.

contained specific averments of facts showing acts committed which were within the definition of practicing given in the law under which the prosecution was commenced. The information was insufficient. The pleader should not have stopped with merely saying that on a certain day the defendant unlawfully practiced medicine, but should have averred that defendant, on a day or date stated, did operate or profess to heal or prescribe for or otherwise treat a physical or mental ailment of some person; set forth facts showing that he did one or all of these acts stated in the law, for some one for a bodily or mental ailment, and failure to do this rendered the information fatally defective. In charging an assault, or an assault and battery, a larceny, or perjury, it would not be sufficient to say in the information that on a certain day the party committed an assault, or a larceny, or a perjury, with no further allegations descriptive of the crime to be alleged, but in each instance it would be necessary to aver specifically the facts constituting the crime, but no more so than in alleging the crime the pleader sought to charge in the information in the case at bar. (*State v. Carey*, 30 Pac. Rep. [Wash.], 729; *Dee v. State*, 9 So. Rep. [Miss.], 356.) "It is a rule of criminal law, based upon sound principles, that every indictment should contain a complete description of the offense charged, that it should set forth the facts constituting the crime, so that the accused may have notice of what he is to meet." (*Lamberton v. State*, 11 O., 284.) "A complaint must charge explicitly all that is essential to constitute the offense." (*Smith v. State*, 21 Neb., 552; *Rakes v. People*, 2 Neb., 157.) It follows that the judgment must be reversed and the case remanded.

REVERSED AND REMANDED.